IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KIMBERLY L. CLEMMER,               )
                                   )
              Plaintiff,           )
                                   )
     v.                            )         1:11CV669
                                   )
CAROLYN W. COLVIN,[1]              )
Commissioner of Social             )
Security,                          )
                                   )
              Defendant.           )


### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

     Plaintiff Kimberly Clemmer ("Plaintiff") brought this

action pursuant to Section 205(g) of the Social Security Act, as

amended (42 U.S.C. § 405(g)), to obtain judicial review of a

final decision of the Commissioner of Social Security denying

her claim for Disability Insurance Benefits under Title II of

the Social Security Act (the "Act"). The parties have filed

cross-motions for judgment, and the administrative record has

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013. Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Michael J. Astrue as the Defendant in this suit.
No further action need be taken to continue this suit by reason
of the last sentence of section 205(g) of the Social Security
Act. 42 U.S.C. § 405(g).

been certified to the court for review.[2]  For the reasons set
forth below, the Commissioner's motion will be granted,
Plaintiff's motion will be denied, and the case will be
dismissed.

## I.    <u>PROCEDURAL HISTORY</u>

Plaintiff filed her application for Disability Insurance
Benefits ("DIB") on January 9, 2008, alleging a disability onset
date of October 31, 2007. (Tr. at 15, 107-14.) Her application
was denied initially (Tr. at 70, 89-92) and upon reconsideration
(Tr. at 69, 93-95).  Thereafter, Plaintiff requested a hearing
de novo before an Administrative Law Judge ("ALJ"). (Tr. at 58.)
Plaintiff, along with her attorney and an impartial vocational
expert, attended the subsequent hearing on October 17, 2008.
(Tr. at 75.)  Although the ALJ ultimately determined that
Plaintiff was not disabled within the meaning of the Act (Tr. at
81), the Appeals Council of the Social Security Administration
subsequently granted Plaintiff's request for review of the
decision and remanded the case for a new hearing (Tr. at 86-87).

Following a second hearing on September 18, 2009, at which
Plaintiff, an impartial vocational expert, and an impartial
medical expert testified, the ALJ again denied Plaintiff's DIB

_____

[2] Transcript citations refer to the Administrative
Transcript of Record filed manually with the Commissioner's
Answer (Doc. 6).

claim.  (Tr. at 15-29.)  The Appeals Council subsequently denied

Plaintiff's request for review of the decision, thereby making

the ALJ's conclusion the Commissioner's final decision for

purposes of judicial review.  (Tr. at 4-6.)

In rendering his disability determination on remand, the

ALJ made the following findings later adopted by the

Commissioner:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.  There is no evidence in the record that the claimant has engaged in any substantial gainful activity since October 31, 2007, the claimant's alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

3.  The claimant has the following severe impairments: temporomandibular joint disorder (TMJ); fibromyalgia; diabetes mellitus; obesity; sleep apnea; depression; anxiety; and attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity from a physical standpoint to perform light work as defined in 20 CFR 404.1567(b).  The claimant is able [to] lift up to 20 pounds occasionally and ten pounds frequently.  She is able to stand and/or walk for up to six hours and sit for up to two hours in an eight hour work day.  The claimant has no postural, manipulative, visual, communicative, or environmental limitations.  However,

due to the combined effects of her mental impairments and pain, the claimant is limited to "unskilled" work performing simple, routine, repetitive tasks in an environment with limited interaction with supervisors, coworkers, and the public.

(Tr. at 17-20.)

The ALJ determined that the demands of Plaintiff's past relevant work exceeded the above residual functional capacity ("RFC"). (Tr. at 26-27.) However, the ALJ then considered Plaintiff's age, education, work experience, and RFC, along with the vocational expert's testimony regarding these factors, and found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. at 27-28.) Accordingly, he concluded that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 28.)

## II.  **LEGAL STANDARD**

Federal law authorizes judicial review of the Social Security Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

"a reviewing court must uphold the factual findings of the ALJ
if they are supported by substantial evidence and were reached
through application of the correct legal standard."  Hancock v.
Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation
omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir.
1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).
"It consists of more than a mere scintilla of evidence but may
be somewhat less than a preponderance."  Mastro v. Apfel, 270
F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation
marks omitted).  "If there is evidence to justify a refusal to
direct a verdict were the case before a jury, then there is
substantial evidence."  Hunter, 993 F.2d at 34 (internal
quotation marks omitted).

"In reviewing for substantial evidence, the court should
not undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the
[ALJ]."  Mastro, 270 F.3d at 176 (internal brackets and
quotation marks omitted).  "Where conflicting evidence allows
reasonable minds to differ as to whether a claimant is disabled,

the responsibility for that decision falls on the ALJ."
Hancock, 667 F.3d at 472.

In undertaking this limited review, the court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R.

---

[3] As set out in Craig:

The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical.

Craig v. Chater, 76 F.3d 585, 589 n.1 (4th Cir. 1996).

§§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must

assess the claimant's residual functional capacity ('RFC')."
Id. at 179.[4]  Step four then requires the ALJ to assess whether,
based on that RFC, the claimant can "perform past relevant
work"; if so, the claimant does not qualify as disabled.  Id. at
179-80.  However, if the claimant establishes an inability to
return to prior work, the analysis proceeds to the fifth step,
which "requires the [Government] to prove that a significant
number of jobs exist which the claimant could perform, despite
[the claimant's] impairments."  Hines, 453 F.3d at 563.  In
making this determination, the ALJ must decide "whether the
claimant is able to perform other work considering both [the
claimant's RFC] and [the claimant's] vocational capabilities
(age, education, and past work experience) to adjust to a new
job."  Hall, 658 F.2d at 264-65.  If, at this step, the
Government cannot carry its "evidentiary burden of proving that

---

[4] "RFC is a measurement of the most a claimant can do
despite [the claimant's] limitations."  Hines, 453 F.3d at 562
(noting that administrative regulations require RFC to reflect
claimant's "ability to do sustained work-related physical and
mental activities in a work setting on a regular and continuing
basis . . . [which] means 8 hours a day, for 5 days a week, or
an equivalent work schedule" (internal emphasis and quotation
marks omitted)).  The RFC includes both a "physical exertional
or strength limitation" that assesses the claimant's "ability to
do sedentary, light, medium, heavy, or very heavy work," as well
as "nonexertional limitations (mental, sensory, or skin
impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined
by the ALJ only after [the ALJ] considers all relevant evidence
of a claimant's impairments and any related symptoms (e.g.,
pain)."  Hines, 453 F.3d at 562-63.

[the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[5]

## III.  <u>DISCUSSION</u>

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date.  She therefore met her burden at step one of the sequential evaluation process.  At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: TMJ, fibromyalgia, diabetes mellitus, obesity, sleep apnea, depression, anxiety, and ADHD.  (Tr. at 17.)  The ALJ found at step three that these impairments did not meet or equal a disability listing.  (Tr. at 18.)  Thereafter, he assessed Plaintiff's RFC and determined that Plaintiff could lift up to 20 pounds occasionally and ten pounds frequently, stand and walk for up to six hours in an eight-hour work day, and sit for up to two hours in an eight-hour work day, and as a result, the ALJ found that Plaintiff's physical impairments limited her to "light work" as defined in 20 C.F.R. § 404.1567.

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

In the first hearing, the ALJ also determined that
Plaintiff was limited to light work, but the ALJ did not account
for the effect of Plaintiff's mental impairments. (Tr. at 78.)
In the second hearing on remand from the Appeals Council, the
ALJ found that Plaintiff's mental impairments, combined with her
physical impairments, limited Plaintiff to "'unskilled' work
performing simple, routine, repetitive tasks in an environment
with limited interaction with supervisors, coworkers, and the
public."  (Tr. at 20.)  Although the ALJ determined at step four
that Plaintiff's RFC precluded her from performing her past
relevant work, he concluded that Plaintiff could perform other
jobs available in the national economy and was therefore not
disabled.  (Tr. at 26-28.)

Plaintiff now argues that, on remand, the ALJ erred in two
respects regarding medical expert testimony.  First, Plaintiff
contends that the ALJ's brief questioning of the medical expert
failed to clarify the effect of Plaintiff's mental impairments
on her RFC in accordance with the Appeals Council's order.
(Pl.'s Br. Supp. Mot. to Reverse the Decision of the Comm'r
("Pl.'s Br.") (Doc. 9) at 3-4; Tr. at 86.)  Second, Plaintiff
argues that the ALJ erred by failing to allow Plaintiff's

counsel an opportunity to question the medical expert himself.
(Pl.'s Br. at 6-7.)

## A.   Compliance with Appeals Council Order

Plaintiff first contends that the ALJ's decision should be
reversed because the ALJ did not comply with the remand order
issued by the Appeals Council.  However, as explained below,
this court does not review an ALJ's decision to determine if it
complies with the Appeals Council's order.  As a result, any
noncompliance with the Appeals Council's remand order is not a
ground, in and of itself, for the court to reverse the ALJ's
decision.

This court, among others, has found that an Appeals Council
remand order "constitutes an intermediate agency action and not
the final decision of the Commissioner." Thompson v. Colvin, No.
1:09CV278, 2014 WL 185218, at *4 (M.D.N.C. Jan. 15, 2014)
(citing Peckham v. Astrue, 780 F. Supp. 2d 1195, 1203 (D. Kan.
2011); Brown v. Comm'r of Soc. Sec., No. 1:08CV183, 2009 WL
465708, at *5 (W.D. Mich. Feb. 24, 2009) (unpublished); Bass v.
Astrue, No. 1:06CV591, 2008 WL 3413299, at *4 (M.D.N.C. Aug. 8,
2008) (unpublished)).  But see Scott v. Barnhart, 592 F. Supp.
2d 360, 371-72 (W.D.N.Y. 2009) (holding that the failure of an
ALJ to comply with such an order "constitutes legal error, and

necessitates a remand"); Salvati v. Astrue, No. 3:08-CV-494, 2010 WL 546490, at *7 (E.D. Tenn. Feb. 10, 2010) (unpublished). "Because '[t]he [c]ourt does not review internal, agency-level proceedings,' it lacks the jurisdiction to 'address whether the ALJ complied with specific provisions of the Appeals Council's remand order.'" Thompson, 2014 WL 185218, at *4 (quoting Bass, 2008 WL 3413299, at *4).

As Plaintiff correctly notes in her brief, the Appeals Council vacated the ALJ's first hearing decision because the ALJ failed to include any limitations related to Plaintiff's established mental limitations in his RFC finding, despite a step two finding that Plaintiff had multiple severe mental impairments and a step three finding that she had moderate limitations in both social functioning and maintaining concentration, persistence and pace. (See Tr. at 77-78, 86.) As a result, Plaintiff argues that her current capabilities could not be adequately compared to the requirements of her past work, to which the ALJ found she could return. (Tr. at 86.)

To correct this failing on remand, the Appeals Council directed the ALJ to "[f]urther consider [Plaintiff's] mental impairments . . . with the special technique described in 20 CFR 404.1520a," "[i]f necessary, obtain evidence from a medical

expert to clarify the nature and severity of [Plaintiff's] impairments and their effects singly and in combination on [her] ability to perform work related activities," and to reassess Plaintiff's RFC, "provid[ing] the appropriate function by function assessment with rationale and specific references to evidence of record in support of the assessed mental and physical limitations." (Tr. at 86-87.)

Plaintiff now argues that the ALJ failed to adequately question the medical expert as directed in the Appeals Council remand order. However, Plaintiff has not addressed the proper scope of judicial review of an ALJ's alleged failure to comply with an Appeals Council remand order. Therefore, the court will not address whether the ALJ complied with specific provisions of the Appeals Council's order as Plaintiff alleges. Instead, the court focuses on whether the ALJ's conclusions are "supported by substantial evidence and were reached through application of the correct legal standard." Hancock, 667 F.3d at 472.

**B.  Insufficiency of Medical Opinion on Mental Impairments**

While the court will not review compliance with the Appeals Council remand order, the court examines Plaintiff's argument to see whether any of the alleged noncompliance with the Appeals Council's remand order resulted in an ALJ decision not supported

by substantial evidence or one that the ALJ made using incorrect legal standards. Plaintiff asserts that the ALJ "took only limited testimony from [a Medical Expert]" and did not ask the Medical Expert to state opinions as to the severity of Plaintiff's mental impairments or whether the medical evidence of record supported Plaintiff's testimony as to the severity of her mental impairments. (Pl.'s Br. (Doc. 9) at 4-5.) However, after reviewing the decision of the ALJ and the medical evidence the ALJ cites, the court finds that the ALJ's conclusions are supported by substantial evidence and were reached through application of the correct legal standard.

When viewed in context of the entire record, it appears that the medical evidence regarding Plaintiff's mental impairments was inconsistent, and the ALJ has the responsibility of resolving those inconsistencies. See Hancock, 667 F.3d at 472. During the proceeding, Plaintiff testified that her chronic pain, lack of rest due to sleep apnea, depression, anxiety, and ADHD created "mental fogginess" which affected her ability to concentrate. She stated that, during her last six months at work, this problem adversely affected her ability to complete paperwork. (Tr. at 21, 568-69.) Treatment records from Plaintiff's former primary care physician, Dr. Sundara

Rajan, confirm that Plaintiff complained of pain, depression, and sleep and memory problems. However, these complaints began in 2004 — three years before she ceased work (Tr. at 22, 390), and there is no evidence from Plaintiff's employment records that indicate her mental impairments adversely affected her job performance. (Tr. at 21.) Elsewhere in the record, Plaintiff indicated that she had always struggled with inattention. (Tr. at 284.)

Similarly, the ALJ identified some conflict in the extent of Plaintiff's mental impairments in her mental health evaluations. Dr. Joseph Appollo, a psychiatrist, evaluated Plaintiff in April 2007, six months before her onset date, and diagnosed her with major depressive disorder and ADHD. (Tr. at 283-85.) However, Dr. Appollo assessed a Global Assessment on Functioning (GAF) score of 65, which indicated only mild symptoms in terms of social and occupational functioning. (Tr. at 21, 24, 283-85.) A year later, an evaluation through the North Carolina Division of Mental Health yielded a diagnosis of adjustment disorder with mixed anxiety and depressed mood and a GAF of 55, indicating moderate symptoms. (Tr. at 25, 383.) Despite this indication of increased severity in early 2007, all medical records after this date indicate that Plaintiff's mood

was relatively well-controlled with medication.  (Tr. at 25, 480, 483-84, 485-86, 495.)  Based on this information, State agency psychological consultant Dr. Guiliana Gage opined that Plaintiff can perform simple, routine, repetitive tasks ("SRRTs").  (Tr. at 26, 272.)  Similarly, Dr. Nancy Herrera, another State agency consultant, found that Plaintiff can perform SRRTs in a low stress, low production environment with limited social interaction.  (Tr. at 26, 260.)

To help reconcile these inconsistencies, the ALJ questioned a medical expert, psychologist Robert Ballantyne.  Dr. Ballantyne testified that, based on the medical records, it appears that Plaintiff's depression may cause her complaints of sleep disturbance and difficulty in concentration or thinking. (Tr. at 590-591.)  The ALJ questioned Dr. Ballantyne regarding the evidence of Plaintiff's mental impairments in the medical record, and specifically questioned Dr. Ballantyne regarding the severity of Plaintiff's depression. (Tr. at 590.)  Dr. Ballantyne pointed to Plaintiff's GAF scores as indicators of the severity of her mental condition.  When asked whether Plaintiff met a listing related to her mental impairments, Dr. Ballantyne identified the relevant listings but indicated that Plaintiff did not meet those listings.  (Tr. at 591.)  This

testimony was directly elicited to clarify the nature and
severity of Plaintiff's mental impairments and the effects of
those impairments on her ability to perform work related
activity, and Dr. Ballantyne's testimony was considered and
reflected in the ALJ's decision.  (Tr. at 25.)

Overall, the ALJ determined that Plaintiff has an RFC from
a mental standpoint to perform "unskilled" work. (Tr. at 26.)
Initially, the ALJ found that "the evidence as a whole is not
fully supportive of [Plaintiff's] subjective complaints" (Tr. at
26), and "there is no indication that [Plaintiff] reported any
problems being around people or out in public" (Tr. at 25).
Nonetheless, the ALJ gave Plaintiff "the benefit of the doubt"
and limited her to "'unskilled' work performing simple, routine,
repetitive tasks in an environment with limited interaction with
supervisors, coworkers, and the public."  (Tr. at 26.)  In
short, the ALJ fully analyzed the nature and severity of
Plaintiff's mental impairments and their effects on her ability
to work, and assigned significant mental RFC limitations.

In determining if the ALJ's determination is supported by
substantial evidence, the court does not question the
conflicting evidence resolved by the ALJ.  See Hancock, 667 F.3d
at 472.  Instead, the court looks to the facts cited by the ALJ

and considers whether the ALJ has built "an accurate and logical bridge from the evidence to his conclusion." <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000).

In this case, the ALJ considered all medical opinions and evaluations related to Plaintiff's mental impairments, including the Global Assessment of Functioning (GAF) test conducted by psychiatrist Dr. Appollo in 2007 that indicated only mild symptoms of difficulty in social or occupational functioning (Tr. at 22), the GAF test conducted in 2008 by the North Carolina Division of Mental Health that indicated moderate symptoms of difficulty in in social or occupational functions (Tr. at 25), the testimony of the State agency psychological consultants that Plaintiff was limited to unskilled work, and the testimony of Dr. Ballantyne explained above.

After discussing this evidence in his decision, as well as discounting Plaintiff's testimony as to her limitations, the ALJ stated that his opinion regarding Plaintiff's mental impairments RFC were consistent with those of the State agency psychological consultants that limited Plaintiff to unskilled work performing simple, routine, repetitive tasks in an environment with limited interaction with supervisors, coworkers, and the public. (Tr. at 26.) Plaintiff makes no argument discrediting this conclusion,

and the record itself provides none. Therefore, substantial evidence supports the ALJ's RFC determination. The court finds no error.[7]

### C. Cross-Examination of Medical Expert

Plaintiff next contends that the ALJ barred her from cross-examining the medical expert. However, Plaintiff was represented by counsel at the hearing, and there is no evidence in the hearing transcript that Plaintiff's counsel ever asked to question the medical expert, let alone was actively barred from doing so. (See Tr. at 591.)

The applicable regulations provide that the ALJ "will allow" the parties or their representatives to question witnesses. 20 C.F.R. § 404.950(e). The transcript reveals that the ALJ first questioned Plaintiff, and then told Plaintiff's counsel, "Counsel, before you question I'm going to get Dr. Balentine [sic] to give me what his overview of her psychological status is." (Tr. at 590.) The ALJ then

---

[7] Although the issue of the ALJ's compliance with the Appeals Council remand order is an internal administrative step not directly before the court, the court notes that, in any event, the evidence in the record indicates that the ALJ did comply with the Appeals Council remand order by further assessing Plaintiff's mental impairments, as noted at length above, and to the extent necessary, obtaining evidence from a medical expert to clarify the nature and severity of her impairments and their effects on her ability to perform work-related activities.

questioned Dr. Ballantyne and then returned to questioning Plaintiff. (Tr. at 591.) At the conclusion of his questioning, the ALJ stated, "All right, counsel, you can question." (Tr. at 594.) Plaintiff's counsel then questioned Plaintiff but did not question Dr. Ballantyne. (Tr. at 594-604.) Thus, based on the transcript of the proceeding, there is no indication that Plaintiff's counsel was in any way precluded from questioning Dr. Ballantyne at that time. Moreover, Plaintiff's counsel confirmed before the close of the administrative proceedings that the medical record was complete and that he had nothing further. (Tr. at 609.) Given these circumstances, the court finds no legal error on the part of the ALJ.[8]

IV. **CONCLUSION**

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, that Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Doc. 8) is **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Doc. 10) is **GRANTED**, and that this action is DISMISSED with prejudice. A judgment consistent with this

---

[8] The court also notes that in his briefing before this court, Plaintiff's counsel does not identify any additional matters that he would have asked the medical expert that were not sufficiently addressed in the testimony provided at the hearing. Thus, the court also cannot find any prejudice as a result of the alleged error.

Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 30th day of September, 2014.

_____
United States District Judge